IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|       Plaintiff, | ) | |
| v. | ) | Case No. 19-CR-303-G |
| | ) | |
|  DAVID QUY, D.O., | ) | |
|       Defendant. | ) | |

**MOTION FOR VARIANCE**

Respectfully submitted,

___*s/ Robert L. Wyatt, IV*
Robert L. Wyatt, IV, OBA No. 13154
WYATT LAW OFFICE
501 N. Walker Avenue, Suite 110
Oklahoma City, OK 73101
(405) 234-5500 Telephone
E-mail: bobwyatt@wyattlaw.com
*Attorneys for Dr. David Quy*

## TABLE OF CONTENTS

**I. ANALYSIS OF THE § 3553(A) FACTORS** ......................................................1

1. The Kinds of Sentences Available and Guideline Range................................1

   a. Why probation........................................................................................1

2. The Nature and Circumstances of the Offense and the
   History and Characteristics of Dr. Quy.........................................................2

   a. The offense...........................................................................................2

      (1) Criminal conduct atypical and outside heartland..............................3

      (2) Motive should be considered.............................................................3

   b. History and Characteristics of the Defendant............................................5

      (1) First-time offender............................................................................5

      (2) At his age, Dr. Quy is less likely to reoffend......................................6

      (3) Defendant's profound physical impairment merits probation
          consideration...................................................................................7

      (4) Ruin of reputation and stigma of a felony conviction.........................9

      (5) Loss of profession and professional license.....................................10

      (6) David Quy is a good parent..............................................................12

      (7) Dr. Quy's character.........................................................................14

3. The Need for the Sentence Imposed ..........................................................15

   a. To reflect the seriousness of the offense, to promote a
      respect for the law, and to provide just punishment ...............................15

   b. To afford adequate deterrence to criminal conduct and a
      to protect the public from this person....................................................16

c. To provide defendant with education, medical care,
or other correctional treatment ...............................................................20

(1) Correctional treatment......................................................................20

(2) Dr. Quy needs care that BOP cannot give........................................20

4. Pertinent Policy Statements.....................................................................21

a. Imprisonment is not a means of promoting correction
and rehabilitation.....................................................................................22

b. Imprisonment inappropriate for first-time offender if
not a violent or serious crime..................................................................22

c. The Guidelines are not presumed reasonable.........................................23

d. Elderly inmates present health and management concerns, are
vulnerable, and age more quickly.........................................................23

e. Guideline range violates the "parsimony provision"...............................28

5. Need to Avoid "Unwarranted" Sentencing Disparities..............................29

6. Need for Restitution to Victims.................................................................29

II. CONCLUSION & PRAYER.......................................................................30

**Table of Authorities**

## CASES

*Dean v. United States,*
   137 S. Ct. 1170, 197 L. Ed. 2d 490 (2017).....................28
*Gall v. United States,*
   552 U.S. 38 (2007).......................................Passim
*Kimbrough v. United States,*
   552 U.S. 85 (2007)...............................22, 23 , 28, 29
*Koon v. United States,*
   518 U.S. 81 (1996) .........................................3
*Molina-Martinez v. United States,*
   136 S.Ct. 1338 (2016)......................................23
*Nelson v. United States,*
   555 U.S. 350  (2009).......................................23
*Pepper v. United States,*
   562 U.S. 476 (2011)........................................14
*Peugh v. United States,*
   569 U.S. 530 (2013)........................................23
*Rita v. United States,*
   551 U.S. 33 (2007)...............................3,13,21,23
*Spears v. United States,*
   555 U.S. 261 (2009)........................................22
*United States  v. Gaind,*
   829 F. Supp. 669 (S.D.N.Y. 1993)...........................19
*United States v. Anderson,*
   533 F.3d 623 (8th Cir.  2008)..............................11
*United States v. Autery,*
   555 F.3d 864 (9th Cir. 2009)...............................14
*United States v. Bannister,*
   786 F.Supp.2d 617 (E.D.N.Y., 2011).........................12

*United States v. Baron,*
 914 F.Supp. 660 (D.Mass. 1995)...............................7

*United States v. Carmona-Rodriguez,*
 2005 WL 840464 (S.D.N.Y. April 11, 2005)......................6

*United States v. Carter,*
 538 F.3d 784 (7th Cir.  2008)................................19

*United States v. Carvajal,*
 2005 WL 476125 (S.D.N.Y. February 22, 2005).................30

United States v. Corpuz,
 953 F.2d 526 (9th Cir. 1992).................................2

*United States v. Coughlin,*
 2008 WL 313099 (W.D. Ark. Feb. 1, 2008)...................8, 17

*United States v. D.M.,*
 942 F.Supp.2d 327 (E.D.N.Y 2013)..........................9,18

*United States v. Davis,*
 437 F.3d 989 (10th Cir.2006)................................29

*United States v. Davis,*
 458 F.3d 491 (6th Cir.  2006)................................7

*United States v. Devous,*
 764 F.2d 1349 (10th Cir. 1985)...............................3

*United States v. Edwards,*
 595 F.3d 1004 (9th Cir. 2010)..........................2, 16, 21

*United States  v. Gaind,*
  829 F. Supp. 669 (S.D.N.Y. 1993)  .........................19

*United States v. Gardellini,*
 545 F.3d 1089 (D.C. Cir. 2008)..............................12

*United States v. Gauvin,*
 173 F.3d 798 (10th Cir. 1999)...............................13

*United States v. Gee,*
 226 F.3d 885 (7th Cir. 2000)................................27

*United States v. Hanson,*
 561 F.Supp.2d 1004 (E.D. Wisc. 2008).........................6

*United States v. Haynes,*
 557 F.Supp.2d 200 (D. Mass. 2008)..........................17

*United States v. Holt,*
 486 F.3d 997 (7th Cir. 2007)................................19

*United States v. Jenkins,*
  854 F.3d 181 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
*United States v. Jewell,*
  2009 WL 1010877 (E.D. Ark. April 15, 2009). . . . . . . . . . . . . . . . . . . . . .5
*United States v. Johnson,*
  964 F.2d 124 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
*United States v. Jones,*
  449 Fed.Appx. 767 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
*United States v. Kippers,*
  685 F.3d 491 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
*United States v. v. Lehmann,*
  513 F.3d 805 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
*United States v. Lente,*
  759 F.3d 1149 (10th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29
*United States. v. Mahan,*
  2007 WL 1430288 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
*United States v. Martin,*
  363 F.3d 25 (1st Cir. 2004 ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
*United States v. Martinez,*
  610 F.3d 1216 (10th Cir.2010 ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29
*United States v. McFarlin,*
  535 F.3d 808 (8th Cir. 2008 ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
*United States v. Menyweather,*
  447 F.3d 625 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
*United States v. Milne,*
  384 F.Supp.2d 1309 (E.D.Wis., 2005). . . . . . . . . . . . . . . . . . . . . . . . . . .4
*United States v. Morgan,*
  635 Fed. Appx. 423 (10th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . .10,11
*United States v. Moy,*
  1995 WL 311441 (N.D.Ill. May 18, 1995) . . . . . . . . . . . . . . . . . . . . . . .8
*United States v. Munoz-Nava,*
  524 F.3d 1137 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
*United States v. Ontiveros,* 07–CR–333,
  2008 WL 2937539 (E.D. Wis. July 24, 2008). . . . . . . . . . . . . . . . . . . . .15
*United States v. Paul,*
  239 Fed. Appx. 353 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
*United States v. Pauley,*

v

511 F.3d 468 (4th Cir.  2007)...................................12

*United States v. Payton,*
754 F.3d 375 (6th Cir. 2014) ...................................7

*United States v. Polito,*
215 Fed.Appx. 354, 2007 WL 313463 (5th Cir. Jan. 31, 2007)......22

*United States v. Prosperi,*
686 F.3d 32 (1st Cir.  2012)...................................9

*United States v. Reyes-Rodriguez,*
344 F.3d 1071 (10th Cir. 2003)................................13

*United States v. Roth,*
1995 WL 35676 (S.D.N.Y. Jan. 30, 1995) ....................8,20

*United States v. Schroeder,*
536 F.3d 746 (7th Cir. 2008)..................................13

*United States v. Singh,*
54 F.3d 1182 (4th Cir. 1995)...................................3

*United States v. Smith,*
2008 WL 1816564  (4th Cir. April 23, 2008)....................6

*United States v. Smith,*
683 F.2d 1236 (9th Cir.  1982)................................9

*United States v. Stern,*
590 F. Supp. 2d 945 (N.D. Ohio 2008)..........................15

*United States v. Stewart,*
590 F.3d 93 (2d Cir. 2009) ................................11,18

*United States v. Tomko,*
562 F.3d 558 (3d Cir. 2009)...................................5

*United States v. Vega,*
545 F.3d 743 (9th Cir. 2008)..................................20

*United States v. Verdin–Garcia,*
516 F.3d 884 (10th Cir. 2008).................................29

*United States v. Wachowiak,*
412 F.Supp.2d 958  (E.D. Wisc. 2006)..........................14

*United States v. Wadena,*
470 F.3d 735 (8th Cir. 2006)...............................16, 21

*United States v. Walker,*
  252 F.Supp.3d 1269 (D. Utah May 18, 2017) (on remand for
  resentencing from 844 F.3d 1253 (10th Cir. 2017) . . . . . . . . . 15, 17, 18
*United States v. Walker ,*
  844 F.3d 1253 (10th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*United States v. Ward,*
  814 F.Supp. 23 (E.D.Va. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*United States v. Whiteskunk,*
  162 F.3d 1244 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*United States v. Wulff,*
  758 F.2d 1121 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Wisconsin v. Mitchell,*
  508 U.S. 476 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATUTES**

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

18 U.S.C. § 3553(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3553(a)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 3553(a)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,21,27

18 U.S.C. § § 3553(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3553(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

18 U.S.C. § 3561(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3563(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,20

18 U.S.C. § 3565(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 3581 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. § 3582 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. §§ 1028(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,11

21 U.S.C. § 843(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,11

28 U.S.C. § 994(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,22

**RULES**

Tenth Cir. R. 32.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

USSG ch. 1, Pt A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

USSG § 5C1.1, App. N. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

USSG § 5H1.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

USSG § 5H1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8,27

**OTHER AUTHORITIES**

*Informal Collateral Consequences,*
   88 WASHINGTON L. REV. 1103 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Correctional Health Care, Addressing the Needs of Elderly,*
*Chronically Ill, and Terminally Ill Inmates,*
U.S. Department of Justice,
National Institute of Corrections (2004 edition) . . . . . . . . . . . . . . . . . .24,25, 28

ECONOMIC PERSPECTIVES ON INCARCERATION AND THE
CRIMINAL JUSTICE SYSTEM
President's Report (April 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Five Things about Deterrence,*
United States Department of Justice, Office of Justice Programs,
   National Institute of Justice (May 2016) . . . . . . . . . . . . . . . . . . . . . . . . . ...18

*The Impact of an Aging Prisoner Population on the Bureau of Prisons,*
Executive Summary,
U.S. Department of Justice
Office of the Inspector General (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Judicial Security and Independence*: *Before the Committee on*
*the Judiciary,*
110th Cong. (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

*Measuring Recidivism: The Criminal History Computation of*
*the Federal Sentencing Guidelines,*  (2004)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Prison Population Continues to Age
Pew Report (2014)   ........................................................................26

*Review of the Federal Bureau of Prisons' Medical Staffing Challenges*
*Evaluation and Inspections Division,*
U.S. Department of Justice,
Office of the Inspector General (March 2016)  ........................................26

Report on the Comprehensive Crime Control Act of 1983
Senate Report No. 98-225  ..........................................................16,17

SUBSTANTIVE CRIMINAL LAW § 3.6(b)
  (1986)..................................................................................................4

*The Constitution in 2020 and the Secret Sentence: Rethinking*
*Collateral Consequences,*
  Balkinization (Sept. 30, 2010)...................................................................12

*The Federal Bureau of Prison's Efforts to Manage Inmate Health Care*
U.S. Department of Justice,
Office of the Inspector General Audit Division (2008) ...............................26

THE DOSE-RESPONSE OF TIME SERVED IN PRISON ON MORTALITY:
NEW YORK STATE, *1989-2003,*
03 Am. J. of Pub. Health 523, 526 (2013)").........................................28

THE NEW JIM CROW
  (Paperback ed. The New Press 2012).........................................................10

## MOTION FOR VARIANCE

In accordance with 18 U.S.C. § 3553, Defendant, David Quy, D.O., respectfully submits the following Motion for Variance to probation. With the corrections and comments noted in the final PSR, the objections or responses do not require any presentation of evidence.  Dr. Quy further adopts his Sentencing Memorandum as if set forth here.

## I. ANALYSIS OF THE § 3553(a) FACTORS

### 1. The Kinds of Sentences Available and Guideline Range

The Court may impose a custodial sentence of anywhere from zero months to the statutory maximum of 4 years on Count 1 and up to 5 years on Count 2. PSR ¶ 103.  The Guideline calculation is Level 10, Criminal History Category I, resulting in a recommended sentence of six-12 months. PSR ¶104. Probation is authorized by statute and by the Guidelines. PSR at ¶¶109-110, citing 18 U.S.C. § 3561(c)(1). If probation is granted, generally, the court must impose a condition of a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2).  There is no claim for restitution, but the parties have agreed that a $50,000 fine is appropriate. PSR ¶9. Thus, probation is an option even without any community confinement or community service.

### a.  Why probation

The Guidelines are only one of the factors to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider

1

sentences other than imprisonment." *Gall v. United States*, 552 U.S. 38, 59 (2007). "Penologically and semantically, probation is a sentence under the Sentencing Reform Act." *United States v. Corpuz*, 953 F.2d 526, 529 (9th Cir. 1992), *abrogated on other grounds* by *United States v. Granderson*, 511 U.S. 39 (1994).   As shown in *United States v. Edwards,* 595 F.3d 1004 (9th Cir. 2010), probation is a deterrent. Throughout this motion, the defense will show several legal and factual reasons why a variance to probation is appropriate for this offender and this offense.

### 2.  The Nature and Circumstances of the Offense and the History and Characteristics of Dr. Quy

#### a. The offense

Dr. Quy has pleaded guilty to a superseding Information in Count 1 obtaining CDS by misrepresentation, fraud, deception, and subterfuge in violation of 21 U.S.C. § 843(a)(3).  He also pled guilty to Count 2 identity theft for violation of 18 U.S.C. §§ 1028(a)(7) and 2. Briefly summarized, Dr. Quy admitted prescribing opioid medication using his employee's identification knowing that the prescription was for his personal use.  As we will show in the Sentencing Memorandum, Dr. Quy has multiple medical conditions, which cause him significant pain. The prescription referenced in Counts 1 and 2 were obtained when Dr. Quy's injuries were fresh and after then-recent surgeries.

### (1)    Criminal conduct atypical and outside heartland

The district court must distinguish whether the case falls under the category of a "heartland case" or an "unusual case." *See Koon v. United States,* 518 U.S. 81, 93 (1996). If the case falls outside the heartland (*i.e.,* is not the usual type of case), the court may decide to depart from the prescribed sentencing range. *United States v. Whiteskunk*, 162 F.3d 1244, 1248 (10th Cir. 1998). This offense and offender are atypical because the person seeking the drugs by fraud was a physician who had genuine medical issues and pain – not merely an addict seeking drugs or a doctor selling drugs for recreational purposes as in *United States v. Devous*, 764 F.2d 1349, 1356 (10th Cir. 1985), or for sex as in *United States v. Singh*, 54 F.3d 1182 (4th Cir. 1995).

The Sentencing Commission noted in USSG ch. 1. Pt A, comment 4(b), that departure may be warranted where conduct is "atypical" and "significantly differs from the norm" of conduct covered by the guideline. *Rita v. United States*, 551 U.S. 338 (2007), reaches the same conclusion that a traditional departure may be justified if the offense or offender is "atypical" and thus not within the "mine-run of similar" cases.

### (2)    Motive should be considered

There is no doubt that Dr. Quy illegally obtained the medication identified in Count 1 by using the identity of an employee (Count 2). Dr.

3

Quy's pain, however, was genuine and resulted from very severe physical problems that manifested over a short period and after surgery intended to repair a back issue. His pain was exacerbated by multiple surgeries which did little, if anything, to alleviate his pain or resolve his back issues. Dr. Quy admittedly used horrible judgment when effectively self-prescribing, but his motive was not the typical drug-seeking behavior of an addict. Instead, it was for pain relief for a legitimate and very painful medical condition described at PSR ¶¶76-82.

"Motives are most relevant when the trial judge sets the defendant's sentence, and it is not uncommon for a defendant to receive a minimum sentence because he was acting with good motives, or a rather high sentence because of his bad motives." *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993), *citing* 1 W. LeFave & A. Scott, SUBSTANTIVE CRIMINAL LAW § 3.6(b), p. 324 (1986). The *Mitchell* Court wrote, "[t]he defendant's motive for committing the offense is one important factor [in determining the sentence]." *Id.* In *United States v. Milne*, 384 F.Supp.2d 1309 (E.D.Wis., 2005), in a bank fraud case, the court noted "[w]ith their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability." The Tenth Circuit reversed a sentence because the trial court refused to consider the

motive for a felon possessing a firearm.    *Cf,* U*nited States. v. Mahan*, 2007 WL 1430288 (10th Cir. 2007) (unpub.)

### b. History and Characteristics of the Defendant

#### (1) First-time offender

Dr. Quy is a first-time offender.  Courts have considered a "minimal criminal record" in determining whether a sentence is reasonable.  *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (en banc).  Consideration of first offender status lends itself toward a lesser sentence. *See, e.g., United States v. Paul*, 239 Fed. Appx. 353 (9th Cir. 2007) (sentence, the top end of the guideline range, was unreasonably high because the defendant was a first-time offender who had displayed remorse); *United States v. Jewell*, 2009 WL 1010877 (E.D. Ark. April 15, 2009) (guideline range near the statutory maximum of 5 years was inappropriate for a first-time offender); *United States v. Munoz-Nava*, 524 F.3d 1137  (10th Cir. 2008)  ("behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" which is shows defendant unlikely to reoffend).  Dr. Quy has no prior criminal history.  PSR at ¶¶58-64.  Here, the Court has Dr. Quy's positive response to pretrial and post-plea release as a track record for release to the community.

The court in *United States v. Ward*, 814 F.Supp. 23 (E.D.Va. 1993), held that a departure may be warranted for a 49-year old defendant

because guidelines fail to consider the length of time the defendant refrains from the commission of his first crime. *See also United States v. Hanson*, 561 F.Supp.2d 1004 (E.D. Wisc. 2008); *United States v. Smith* 2008 WL 1816564 (4th Cir. April 23, 2008) (unpub.); Dr. Quy is 63 years old. This, his first crime, was committed at age 62.

### (2) At his age, Dr. Quy is less likely to reoffend

The risk of recidivism is paramount to every sentencing decision. 18 U.S.C. § 3553(a)(2)(B). The Guidelines suggest that "[a]ge . . . may be relevant in determining whether a departure is warranted if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." USSG § 5H1.1. The Guidelines further recommend home confinement if the Court determines that it would be equally efficient and more cost-effective. *Id; see infra.* Dr. Quy is 63 years old and has never been in any significant trouble. The risk to recidivate is slim.

Where a 55-year old man pled guilty to distribution of drugs, a sentence of 30 months (below guideline range) was proper in part "in view of the low probability that Carmona-Rodriguez will recidivate." *United States v. Carmona-Rodriguez,* 2005 WL 840464, * 4 (S.D.N.Y. April 11, 2005) (unpub.) The Sixth Circuit vacated a sentence from the E.D. of

Michigan, where the trial court failed to consider the age of the defendant and how age factors into recidivism. *United States v. Payton*, 754 F.3d 375, 378 (6th Cir. 2014); *United States v. Davis*, 458 F.3d 491 (6th Cir. 2006). The *Payton* court highlighted statistics showing a significant drop in recidivism after 50 years of age. *Id.* at 379. One compelling statistic shows that "only about one percent of elderly offenders ever face a second conviction." *Id.* (collecting studies). *See also, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 12, 28 (2004)).

### (3) Defendant's profound physical impairment merits probation consideration

For non-violent first offenders in poor health, probation or house arrest should be considered.  *See* USSG § 5H1.1 and 28 U.S.C. § 994(j). The Eighth Circuit agreed in *United States v. McFarlin,*   535 F.3d 808 (8th Cir. 2008), where the defendant was convicted of a § 371 conspiracy to distribute drugs with a maximum statutory sentence of five years. Though the Guidelines called for a 10-year sentence, the district court's sentence of probation and home detention for three years was not unreasonable in view of the defendant's poor health (multiple heart surgeries, etc.) *See United States v. Baron*, 914 F.Supp. 660, 662-665 (D.Mass. 1995) (in a bankruptcy    fraud prosecution, the court's downward departure from   range of 27-33 months to probation and

home detention for a 76-year old defendant with medical problems which could be made worse by incarceration); *United States v. Moy*, 1995 WL 311441, at 25 29, 34 (N.D.Ill. May 18, 1995) (downward departure based upon Defendant's advanced age, aggravated health condition, and depressed state).

In *United States v. Coughlin*, 2008 WL 313099 (W.D. Ark. Feb. 1, 2008) (unpub.), the former CEO of Walmart who embezzled money and evaded taxes was sentenced to probation with home detention for 27 months in part because:

> "Home detention and probation can be severe punishments...hugely restrictive of liberty, highly effective in the determent of crime and amply retributive"—and because "That form of punishment is especially appropriate in cases such as Coughlin's, where there is little concern for future criminal activity on the part of the defendant and the defendant is in need of medical attention.... It is the opinion of this Court that sentences of home detention and probation, made permissible through departure and variance, can provide ample opportunity for sentencing judges to exercise their discretion in favor of alternatives to imprisonment when such alternatives accomplish the goals of criminal punishment."

*Id* at *5 and *6;  *United States v. Roth*, 1995 WL 35676, at 1 (S.D.N.Y. Jan. 30, 1995) (63-year-old defendant with neuromuscular disease had "profound physical impairment" warranting downward departure under the Guidelines). Dr. Quy has profound physical impairment as well and

is not a danger to the public.    *See infra* at 23 (Policy statements referencing 18 U.S.C. § 3553(a)(2)(D) and USSG § 5H1.4).

### (4) Ruin of reputation and stigma of a felony conviction

"The stigma of a felony conviction is permanent and pervasive," *United States v. Smith,* 683 F.2d 1236, 1240 (9th Cir.  1982), and "irreparably damages one's reputation, *United States v. Wulff,* 758 F.2d 1121, 1125 (6th Cir. 1985). In a child porn case with guidelines of 78-97 months, a sentence of probation was found appropriate in part because "defendant's guilty plea will result in the stain of a federal felony conviction for a sex-related crime. . . ." *United States v. D.M.*, 942 F.Supp.2d 327 (E.D.N.Y 2013).   The First Circuit, in *United States v. Prosperi*, 686 F.3d 32 (1st Cir.  2012), aptly noted that "[s]ometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed."  Dr. Quy has had to account for this felony, which has stripped him of his medical license and DEA registration and will also deprive this gun enthusiast (PSR ¶ 97) of his Second Amendment rights forever.

Historically, family members, friends, employers, reporters, etc., had to go to the courthouse or the law enforcement repositories to run a background check or find a criminal record.  Today, neighbors, in-laws,

prospective employers, and others make snap judgments by running simple, free background checks and even simple Google searches with only a few keystrokes and mouse clicks. The results of those searches may be misused against someone before even getting a chance to explain or to show how this person has changed.   So the stigma of a felony conviction may be more intrusive and pervasive today than ever before. *See generally*, Wayne A. Logan *Informal Collateral Consequences*, 88 WASHINGTON L. REV. 1103 (2013) ("Today, convict status serves as a perpetual badge of infamy, even serving to impugn reputation beyond the grave.");  Michelle Alexander, THE NEW JIM CROW (Paperback ed. The New Press 2012) at p. 94 ("Once a person is labeled a felon, he is ushered into a parallel universe in which discrimination, stigma, and exclusion are perfectly legal."); *id* at 163 ("When someone is convicted of a crime today, their 'debit to society' is never paid.'")

### (5) Loss of profession and professional license

Since *United States v. Morgan*, 635 Fed. Appx. 423, 444 (10th Cir. 2015) (unpub.), it could be argued that trial courts generally should not consider the loss of a professional license because "[n]one of these things are his sentence. Nor are they consequences of his sentence; a diminished sentence based on these considerations does not reflect the seriousness of his offense or effect just punishment." *Id* at 445.

Notwithstanding *Morgan*, this Court should consider the loss of David Quy's osteopathic license in fashioning his sentence.

The Government required the surrender of his license for at least two years as part of the plea agreement to incapacitate his from working as a physician. Plea Agreement ¶17; PSR ¶10.  Dr. Quy has surrendered his license as required by the Plea Agreement, and the Board of Osteopathic Examiners has accepted the surrender.  Because the Plea Agreement required license surrender, the surrender is "punishment" and is not an incidental consequence of the conviction.  This required surrender exceeds the statutory punishment for §§ 843(a)(3) and 1028(a)(7).  Thus, the facts in *Morgan* are distinguishable.  Moreover, *Morgan* is an unpublished opinion and is **not** precedent, as noted on the face of the *Morgan* opinion. *See* Tenth Cir. R. 32.1.

Even considering *Morgan*, courts have historically considered collateral consequences in fashioning sentences.   *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009), the Circuit wrote, "It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence." *Id.* at 141-142. U*nited States v. Anderson*, 533 F.3d 623 (8th Cir.  2008) (in a conviction for insider trading and money laundering, the court considered collateral consequences specifically address[ing] other ways in which the defendant

11

had suffered atypical punishment such as the loss of his reputation and his company, the ongoing case against him from the Securities and Exchange Commission and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system. *United States v. Bannister*, 786 F.Supp.2d 617 (E.D.N.Y., 2011)("In every state and under federal law, there are hundreds of collateral consequences that apply automatically or on a discretionary basis, to people convicted of crimes. Most of these apply for life ... and can never be removed, or can be relieved only through virtually unavailable methods like a pardon from the President [.]" *Id, citing* Gabriel Chin, *The Constitution in 2020 and the Secret Sentence: Rethinking Collateral Consequences,* Balkinization (Sept. 30, 2010), http://balkin.blogspot.com/2010/09/constitution–in–2020–andsecret. html; *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (probation properly imposed in part because defendant "already suffered substantially due to the criminal investigation"); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (loss of profession and teacher retirement)).

### (6) David Quy is a good parent

David is the father of five with one son, age 14, still at home. (PSR ¶¶72-73). His son, like the children of others similarly situated, needs his father during his formative years. With COVID and social distancing,

his son's need for his father is even more important in his social and emotional development.

Consideration of the devastating effects on an innocent child has been factored in granting probation. *United States v. v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (probation granted in part where devastating effect mother's imprisonment would have on defendant's 8-year old son); *United States v. Gauvin*, 173 F.3d 798 (10th Cir. 1999) (in part to minimize the impact on the defendant's children); *United States v. Schroeder*, 536 F.3d 746 (7th Cir. 2008); *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992).

We recognize that "a district court may depart based on family circumstances 'only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'" *United States v. Reyes-Rodriguez,* 344 F.3d 1071, 1073 (10th Cir. 2003). However, the Court in *Rita*, 551 U.S. at 351, held that even when a traditional departure is not justified, a non-guideline sentence can be appropriate "because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless"; The en banc court in *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006), held that "after *Booker*, courts can now … have the discretion to weigh a multitude

13

of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant ... [including] family ties and responsibilities.'"

### (7) Dr. Quy's character

"Congress could not have been clearer in directing that '[n]o limitation ... be placed on the information concerning the background, character, and conduct' of a defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence.'" *Pepper v. United States*, 562 U.S. 476, 490–91 (2011). David Quy's sentencing letters describe his character.[1] (*See* Proposition I).

In *United States v. Autery,* 555 F.3d 864 (9th Cir. 2009), the Circuit affirmed the trial court's *sua sponte* variance to probation in child porn case in part because of his positive characteristics "such as his having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic attitude, his motivation and intelligence, and his support of his wife and child."   These characteristics "undoubtedly constitute 'history and characteristic of the defendant' that justify a variance below the guidelines." *Id.* Dr Quy satisfies all of these criteria. *See also United States v. Wachowiak*, 412 F.Supp.2d 958, 963   (E.D.

---

[1]   Dr. Quy has submitted only a handful of sentencing letters because he has isolated himself from the Vietnamese community because of embarrassment and shame.   PSR ¶74.

Wisc. 2006)("[i]n cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range.") The sentencing letters support that David Quy has earned a reputation as a person of good character.

### 3. The Need for the Sentence Imposed

#### a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment

Respect for the law sometimes may be promoted by a probationary sentence, while imprisonment in unique cases may promote derision for the law. *Gall v. United States*, 552 U.S. 38, 54 (2007). *United States v. Ontiveros*, 07–CR–333, 2008 WL 2937539, at *3 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]."); *United States v. Walker*, 252 F.Supp.3d 1269, 1290-91 (D. Utah May 18, 2017) (on remand for resentencing from 844 F.3d 1253 (10th Cir. 2017)), ("Just punishment, including solely for retributive ends, can be accomplished by a set of other sanctions that do not necessarily include incarceration"); *United States v. Stern*, 590 F. Supp. 2d 945, 957 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake . . . There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than

there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist.")   In *United States v. Wadena,* 470 F.3d 735 (8th Cir. 2006) (sentence of probation, in part, because client suffered from chronic health conditions, was "sufficient but not greater than necessary to impress upon [Wadena] the seriousness of the offense." The sentence promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence as well as providing Wadena "with needed medical care." . . . "[T]he overarching policy contained in [5H1.1 is clear: in some situations, a district court may impose a non-prison sentence when a defendant has serious medical needs"). Here, probation is just, yet still promotes respect for the law and considers the seriousness of the offense.

### b. To afford adequate deterrence to criminal conduct and to protect the public from this person

The next statutory factors look to incapacitation: the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Congress specifically contemplated probation as a deterrent and punishment by enacting Section 3553(a): "It may *very often* be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *United States v. Edwards*, 595 F.3d 1004, 1016 n. 9

(9th Cir. 2010) (emphasis added) (quoting Senate Report No. 98-225 on the Comprehensive Crime Control Act of 1983); *United States v. Haynes,* 557 F.Supp.2d 200 (D. Mass. 2008)   (defendant convicted of selling drugs, with 33-41 months guideline range, court sentences to time served  because public safety did not call for Guideline sentence).

The Supreme Court held in *Gall v. United States,* 552 U.S. 38 (2007)m that a   sentence of probation is "a substantial restriction of freedom" because a probationer

> will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term.)

*Id.* at 44.   Following suit, the District Court in Utah noted,

> **Probationary sentences accord flexibility to the courts because they can be revoked at any time** upon a hearing and consideration of the general statutory sentencing provisions. *See* 18 U.S.C. § 3565(a). **Upon revocation, the court may "impose any term of imprisonment that was available at the initial sentencing proceeding**." *United States v. Jones*, 449 Fed.Appx. 767, 769 (10th Cir. 2011) (unpublished); *see also United States v. Kippers*, 685 F.3d 491, 499 (5th Cir. 2012) (noting "leniency at the original sentencing generally may justify a harsher revocation sentence").

*Walker,* at 1294 (emphasis added).

"Home detention and probation can be severe punishments, hugely restrictive of liberty, highly effective in the determent of crime and amply retributive." *United States v. Coughlin*, 2008 WL 313099 *5 (W.D. Ark. Feb. 1, 2008) (unpub.) There, the court found probation and home detention former CEO of Walmart accomplished sentencing goals more effectively than imprisonment because not all defendants must be sentenced to prison to be duly punished, notwithstanding guideline range of six to 12 months.  PSR ¶104.

"The need for further deterrence and protection of the public is lessened because the conviction itself [felon status] already visits substantial punishment of the defendant." *United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009); *United States v. D.M, supra*, (probation appropriate in part because little likelihood he will engage in future criminal conduct).  "Fear of incarceration" on probation induces fear of committing future crimes." *Walker*, at 1299, citing  the NIJ study's conclusion "that sending a convicted individual to prison is not a very effective way to deter crime and that increasing the severity of punishment does little to deter crime." Office of Justice Programs, National Institute of Justice, *Five Things About Deterrence,* United States Department of Justice (May 2016), https://nij.gov/five-things/pages/deterrence.aspx.

In addition to other factors above, requiring David Quy to surrender his medical license is the biggest deterrent to him and to other medical professionals who might engage in fraudulent prescribing. Loss of his license incapacitates the ability to commit the crime charged. *United States v. Gaind*, 829 F. Supp. 669 (S.D.N.Y. 1993) (the destruction of a defendant's only business, involving testing material for the EPA, warranted a downward departure in false statement case because the elimination of the defendant's inability to engage in similar or related activities and the substantial loss of assets and income were a source of individual and general deterrence). Not only did Dr. Quy lose his license, but he lost the business he developed for over 14 years and lost his primary source of income.

Age is also a deterrent and factors into the need to protect the public. *United States v. Carter*, 538 F.3d 784 (7th Cir. 2008) (where 61-year old defendant convicted of money laundering and tax fraud sentence was reasonable in part because defendant's age is relevant to the risk of recidivism takes into consideration the need for the sentence imposed to protect the public from further crimes of the defendant); *cf., United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007)(considering the impact of age on recidivism). Dr. Quy is 63 years old and unlikely to reoffend.

19

### c. To provide defendant with education, medical care, or other correctional treatment

#### (1) Correctional treatment

The Circuit in *United States v. Vega,* 545 F.3d 743 (9th Cir. 2008), wrote, "We agree with the Seventh Circuit that the imposition of... community service conditions will further the statutory goal of providing 'the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.'" Community service is not required for probation, so long as there is a fine or restitution. 18 U.S.C. § 3563(a)(2).   The loss of Dr. Quy's license (and career) is a § 3553(a) correctional treatment because it is a requirement of the Plea Agreement. *Supra.*

#### (2)  Dr. Quy needs care that BOP cannot give

Dr. Quy suffers a variety of medical issues, primarily with his back and legs.  Through a series of unsuccessful back surgeries, his L-5 was removed from his spine; the remainder is fused with a 4″ metal plate. He still has daily pain, but since committing his offenses, he has learned to live with the pain along with limited medication.  In addition, he suffers from foot drop.  This condition effects Dr. Quy's balance and gait.  He falls easily, and with his frail body, a simple fall can do significant harm to him. *See United States v. Roth*, *supra* (63-year-old defendant with neuromuscular disease had "profound physical impairment" warranting

downward departure); *United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006) (67-year-old defendant convicted of mail fraud with guideline range of 18-24 months, it was proper for the district court to impose below guideline sentence of probation, in part, because "Wadena's age and recent deterioration in his health reduce the risk of re-offending, however, as do the terms of his probation"). *United States v. Edwards*, 595 F.3d 1004 (9th Cir.  2010) "while the district court agreed with the Government that the BOP was capable of providing for Edwards's medical care, it found that a sentence of probation would satisfy the requirement of providing needed care in the most effective manner. 18 U.S.C. § 3553(a)(2)(D).

### 4. Pertinent Policy Statements

*Rita v. United States*, 551 U.S. 338, 355 ( 2007) and *Gall,* at 49-50, explicitly bar any type of proportionality test when applying a substantial variance; instead, trial courts "must make an individualized assessment based on the facts presented" to determine whether a requested sentence is appropriate. *Gall* at 50. The district court's sentencing discretion includes the option to vary from the guidelines "based on a policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case."

*Spears v. United States,* 555 U.S. 261, 264 (2009); *Kimbrough v. United States*, 552 U.S. 85 (2007).

### a.   Imprisonment is not a means of promoting correction and rehabilitation

"A defendant who has been found guilty of an offense may be sentenced to a term of imprisonment." 18 U.S.C. § 3581.  "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors outlined in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582.

### b.   Imprisonment inappropriate for first-time offender if not a violent or serious crime

Throughout this motion, we have given the Court reasons to grant a departure or variance.  Dr. Quy's Guideline Level is 10 (PSR ¶104), which places him squarely into Zone B. The Guidelines, at USSG § 5C1.1, App. N. 4, suggest that if the defendant is a non-violent first offender and is in Zone A or B, the "court should consider imposing a sentence other than a sentence of imprisonment," *citing* 28 U.S.C. § 994(j). *Cf., United States v. Polito,* 215 Fed.Appx. 354, 2007 WL 313463 (5th Cir. Jan. 31, 2007) (unpub.) (where defendant convicted of possession of child pornography and a guideline range of 27-33 months, district court's sentence of

probation with one-year house arrest reasonable in part because first offense).   Accordingly, a probationary sentence is appropriate here.

### c.    The Guidelines are not presumed reasonable

The defense recognizes that federal courts understand that they "must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Molina-Martinez v. United States,* 136 S.Ct. 1338, 1345 (2016).   The Guidelines are indeed "the framework for sentencing" and "anchor ... the district court's discretion." *Id.*   Nevertheless, the district judge "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 39 (2007); *Nelson v. United States,* 555 U.S. 350, 351  (2009) (per curiam) ("the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," citing *Rita*); *Peugh v. United States,* 569 U.S. 530, 536 (2013) ("The court may not presume that the Guidelines range is reasonable").   No special weight is given to the Guidelines as opposed to the other factors mentioned in the statute.   *See Kimbrough,* 552 U.S. at 85-86; *Gall,* 552 U.S. at 58-59).

### d.    Elderly inmates present health and management concerns, are vulnerable, and age more quickly

Though Dr. Quy is only 63 years old and would not generally be considered elderly, prisoners are considered elderly when over age 50.

*See, Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Department of Justice, National Institute of Corrections* (2004 edition)**.**   The Justice Department Report (May 2015) concluded "BOP institutions lack appropriate staffing levels to address the needs of an aging inmate population and provide limited training for this purpose." *The Impact of An Aging Prisoner Population on the Bureau of Prisons*, Executive Summary, found at https://oig.justice.gov/reports/2015/e1505.pdf.   "The physical infra-structure of BOP institutions cannot adequately house aging inmates. Aging inmates often require lower bunks or handicapped-accessible cells, but overcrowding throughout the BOP system limits these types of living spaces. Aging inmates with limited mobility also encounter difficulties navigating in situations without elevators and with narrow sidewalks or uneven terrain." *Id.*   Here, Dr. Quy has very limited mobility.  He suffers from serious back issues and "drop foot"; thus, his gait is altered and balance is faulty.  He falls often and cannot use his left arm, so when he falls, he cannot "catch himself."  On the hard surfaces and with corners and angles on the metal surfaces in prison, Dr. Quy is vulnerable to severe injury merely from his physical instability.

Notwithstanding Dr. Quy's personal situation, there are systemic issues with medical management in federal prisons. "Management

problems with elderly inmates are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment." *Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, at pp 9 and 10.    The report notes on p. 10 that first-time offenders are "easy prey for more experienced predatory inmates."  Dr. Quy would be an easy target of abuse, as he can no longer defend himself in any meaningful way.

In a 2016 White House study, it was determined that "Incarcerated individuals face substantial health risks. When prisons are at capacity or overcrowded, the risk of inmate injury, sexual victimization, disease transmission and death can increase." President's Report (April 2016), ECONOMIC PERSPECTIVES ON INCARCERATION AND THE  CRIMINAL JUSTICE  SYSTEM  at p. 48, found  at  https:www.whitehouse.gov/sites/ default/files/page/files/20160423_cea     incarceration_criminal_justice. pdf.  That report also found that "Aging inmates are more costly to incarcerate primarily due to their medical needs." Moreover, wait times for treatment inside and outside of prison hospitals are unacceptably long.  "For example, using BOP data from one institution, we found that the average wait time for inmates, including aging inmates, to be seen by

an outside medical specialist for cardiology, neurosurgery, pulmonology, and urology to be 114 days." *Id.*  OIG audits of BOP in 2008 and 2016 both showed that the BOP "did not provide required medical services to inmates. . . ." [2]  "The Federal Bureau of Prisons (BOP) is responsible for incarcerating federal inmates and is required to provide them with medically necessary healthcare. However, recruitment of medical professionals is one of the BOP's most significant challenges and staffing shortages limit inmate access to medical care, result in an increased need to send inmates outside the institution for medical care, and contribute to increases in medical costs.[3]  A Pew Report noted that "The National Institute of Corrections pegged the annual cost of incarcerating prisoners 55 and older with chronic and terminal illnesses at, on average, two to three times that of the expense for all other inmates, particularly younger ones. More recently, other researchers have found that the cost differential may be wider." *See,* http://www.pewtrusts.org/en/research-and-analysis/analysis/2014/ 10/03/ prison-population-continues-to-age.

---

[2] *See* U.S. Dep't of Justice, Office of the Inspector General Audit Division, *The Federal Bureau of Prison's Efforts to Manage Inmate Health Care* ii-xix, 32-34 (2008), available at www.justice.gov/oig/reports/BOP/a0808/final.pdf.

[3] *See* Office of the Inspector General U.S. Department of Justice *Review of the Federal Bureau of Prisons' Medical Staffing Challenges Evaluation and Inspections Division* 16-02 March 2016, EXECUTIVE SUMMARY,

From a policy standpoint, the sentence imposed must ensure that "needed . . . medical care" is provided "in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The Sentencing Commission now recognizes that "[p]hysical condition . . . may be relevant in determining whether a departure is warranted," and has always recognized that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." USSG § 5H1.4, p.s.  That is certainly true with Dr. Quy's circumstances.   *See also, United States v. Martin*, 363 F.3d 25, 49-50 (1st Cir. 2004) (upholding departure when BOP had a policy of not administering the only medication successful in treating defendant's Crohn's disease and finding a short period of home detention with permission to attend medical appointments is by far the most effective way to treat the medical needs);  *United States v. Gee*, 226 F.3d 885, 902 (7th Cir. 2000) (finding no abuse of discretion where district court concluded BOP's letter stating its ability to handle medical conditions of all kinds was merely a form letter and that imprisonment posed a substantial risk to the defendant's life).

Courts have even found that imprisonment of elderly inmates results in quicker "aging."   *United States v. Jenkins*, 854 F.3d 181, 197 n. 2  (2d Cir. 2017) ("[W]e do know that, as a statistical matter, the life expectancy of an incarcerated person drops significantly for each year of

incarceration. See Evelyn J. Patterson, THE DOSE-RESPONSE OF TIME SERVED IN PRISON ON MORTALITY: NEW YORK STATE, *1989-2003*, 103 Am. J. of Pub. Health 523, 526 (2013)").   "Several important factors seem to speed the aging process for those in prison." *Correctional Health Care,* at 8-9. Available at: https://info.nicic.gov/nicrp/system/files/ 018735.pdf. At 63 years old, Dr. Quy is aging fast enough.

### e.   Guideline range violates the "parsimony provision"

Federal law requires the Court to impose a punishment that is "sufficient, but not greater than necessary," to effectuate the policy objectives of Congress (18 U.S.C. § 3553(a)) and "to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175, 197 L. Ed. 2d 490 (2017). This so-called parsimony provision is the "overarching provision" of the statute. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The Court is not only allowed to consider below-guideline sentences but should impose below-guideline sentences when a lesser sentence can satisfy the purposes of § 3553. *Kimbrough* at 111.   A probationary sentence for Dr. Quy would meet all of the sentencing purposes.

**5. Need to Avoid "Unwarranted" Sentencing Disparities**

The Tenth Circuit addressed this issue in *United States v. Lente*, 759 F.3d 1149, 1168 (10th Cir. 2014).  Specifically, 18 U.S.C. §3553(a)(6) requires a district court to consider "disparities nationwide among defendants with similar records and Guideline calculations." *Lente,* relying on *United States v. Verdin–Garcia,* 516 F.3d 884, 999 (10th Cir. 2008) (emphasis omitted). It recognizes the "unquestioned" precept "that uniformity remains an important goal of sentencing." *Kimbrough v. United States*, 552 U.S. at 107.   However, "disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Davis,* 437 F.3d 989, 997 (10th Cir.2006) (quotation and citations omitted).  Further, the Tenth Circuit recognizes that "[section] 3553(a)(6)'s consideration of unwarranted sentence disparities is but one factor that a district court must balance against the other § 3553(a) factors in arriving at an appropriate sentence." *United States v. Martinez,* 610 F.3d 1216, 1228 (10th Cir.2010).

**6.   Need for Restitution to Victims**

Restitution is mandatory here, but there is no claimed loss. Thus, restitution is not a factor for consideration here.

## II. CONCLUSION & PRAYER

Mercy and hope are proper considerations. "There is no mercy in the system." J. Kennedy, *Judicial Security and Independence*: *Before the Committee on the Judiciary*, 110th Cong. (2007). Mercy, through probation, still punishes David Quy. Yet mercy gives him hope, a "necessary condition of mankind." *United States v. Carvajal*, No. 04 CR 222AKH, 2005 WL 476125, at *6 (S.D.N.Y. February 22, 2005).

Dr. David Quy made some bad choices in these circumstances, but he has owned his actions and has accepted responsibility. He is not a threat of future harm. Even with probation, he will suffer a lifetime of consequences from this felony conviction that standing alone is sufficient punishment. Anything more is greater than necessary. Dr. Quy will pay the full $50,000 fine at sentencing. Both Dr. Quy and counsel trust the Court to fashion an appropriate sentence.

<div style="margin-left:40%">

Respectfully submitted,

   *s/ Robert L. Wyatt, IV*
Robert L. Wyatt, IV, OBA No. 13154
WYATT LAW OFFICE
501 N. Walker Avenue, Suite 110
Oklahoma City, OK 73101
(405) 234-5500 Telephone
E-mail: bobwyatt@wyattlaw.com
*Attorneys for Dr. David Quy*

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2020, a true and correct copy of the foregoing Motion was sent via this court's electronic court filing system to:

Scott Williams, AUSA

And all other registered parties.

<div align="right">

*s/ Robert L. Wyatt, IV*
Robert L. Wyatt, IV

</div>